UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

GEORGE GARVEY, ADAM BIANCO,
ANTHONY FIGUEROA, CURTIS CUTLER
DALE NICHOLLS, DANIEL HULKOWER,
FRANK CALAMANCO, JAMES GERMANO
KOLA SMITH, MANDEL BAILEY,
MITCHUM GREENE,
PATRICIA BUCCELLATO,
RALPH MARTINEZ, RUSSELL PIAZZA
SEAN ABELL, THOMAS LIBRETTI

　　　　　Plaintiffs,


　　　　　-against-


ERIC ADAMS,
CITY OF NEW YORK,

　　　　　Defendants

**COMPLAINT**

Case no._1:23-cv-517_____

Jury Trial:  ☒Yes　　☐No

PRELIMINARY STATEMENT

　　Beyond the Statue of Liberty everything appears normal. People quickly walk as if they are perpetually late. Sounds of honking car horns reverberate off buildings so tall it looks like they touch the sky. A blend of unique scents fills the air. Tourists posing for photographs line the streets. In New York City (NYC or City) everything seems to be business as usual. It is hard to imagine that only a few years ago NYC was the epicenter of a worldwide pandemic. However, the specter of equality's greatest nemesis rose from the ashes of the pandemic.

1

It cannot be seen and has no smell. It makes no sound. It is not perceivable to most people. Even though it is larger than any building and viler than the sewage beneath the ground. Its invisible scaffolding permeates every borough. It is a discriminatory caste system. And its architect is a man named Eric Adams.

Miles above the streets crowded with people, Eric Adams designed and implemented a caste system built for the 21st century. At the bottom of this caste is the working class. The men and women who serve the public as City employees. Plaintiffs are sixteen sanitation workers who helped keep the City sanitary by picking up the tons of garbage it produces every day. Professional athletes and performers are at the top of Adams' caste system. The people and industries that bring large amounts of money into the City are positioned right beside them. While members of the NYPD, FDNY, DOC, DOE and other essential City workers stand at the bottom alongside Plaintiffs. Considering, all the evils caused throughout human history by discrimination, Eric Adams should know better than to repeat the transgressions of the past.

Eric Adams decided that public servants are less valuable than everyone else. Eric Adams declared that these men and women did not get to choose whether to get a shot against COVID-19. So, he mandated compulsory vaccination for only City employees. These vaccinations are permanent and intended to protect the public from transmission of COVID-19. Except COVID-19 is not a threat specific to the workplace. It exists everywhere people gather. And even then, it does not stop the transmission of COVID-19. But wait, it gets worse. Scientific literature as well as data from

databases like the Vaccine Adverse Reporting System (VAERS) has shown that some people experience vaccine induced side effects. Sometimes the side effects are fatal.

Those who failed to obey Adams' edict were terminated. He stripped thousands of people of their careers. He took away the working class's ability to work. While everyone else—from Wall Street stockbrokers to barristers at Starbucks—remained exempt from his mandate. Eric unashamedly acknowledged that these exemptions had nothing to do with furthering the public health. Instead, he was furthering NYC's economy, at the expense of the people who keep the City operational and safe.

Eric Adams caste system is akin to a state sponsored social hierarchy. Something straight out of the world of science fiction. Except this is not a fictional, dystopian future from a George Orwell novel. It is the dystopian present. And it is real.

Shockingly, this discrimination is occurring in plain sight. It is invisible to most people because they are exempted, and the media is silent. But "injustice anywhere is a threat to justice everywhere."[1] Plaintiffs will not be silenced as Eric Adams continues to discriminate against them with impunity. Plaintiffs have experienced trauma, anxiety, depression and mental anguish. They may never be the same again.

Eric Adams is not above the supreme law of the land. He is not ordained with the power of a monarch or an autocrat. The Fourteenth Amendment exists to protect Plaintiffs from this exact type of government sanctioned discrimination. During reconstruction the Framers of the Fourteenth Amendment set out to ensure that all Americans enjoyed lives free from the evils of discrimination. The Fourteenth

---

[1] Dr. Martin Luther king Jr.

3

Amendment will be reduced to nothing but words until Eric Adams is held accountable. Plaintiffs bring this action accordingly.

PARTIES

1. George Garvey was employed by NYC and DSNY in the county of Queens, for over nine years.

2. Plaintiff Adam Bianco was employed by NYC and DSNY in the county of Bronx, for five and a half years.

3. Plaintiff Anthony Figueroa was employed by NYC and DSNY in the county of Kings, for over eight years.

4. Plaintiff Curtis Cutler was employed by NYC and DSNY in the county of Richmond for over seven years.

5. Plaintiff Dale Nicholls was employed by NYC and DSNY in the county of Kings, for eight and a half years.

6. Plaintiff Daniel Hulkower was employed by NYC and DSNY in the county of New York, for five and a half years.

7. Plaintiff Frank Calamanco was employed by NYC and DSNY in the county of New York for seventeen years.

8. Plaintiff James Germano was employed by NYC and DSNY in the county of Queens, for sixteen years.

9. Plaintiff Kola Smith was employed by NYC and DSNY in the county of Kings for eighteen years.

10. Plaintiff  Mandel Bailey was employed by NYC and DSNY in the county of Kings, for five years.

11. Plaintiff  Mitchum Greene was employed by NYC and DSNY in the county of Kings, for seventeen and a half years.

12. Plaintiff  Patricia Buccellato was employed by NYC and DSNY in the county of New York, for three years.

13. Plaintiff  Ralph Martinez was employed by NYC and DSNY in the county of Queens, for seven and a half years.

14. Plaintiff Russell Piazza was employed by NYC and DSNY in the county of Richmond, for sixteen and a half years.

15. Plaintiff  Sean Abell was employed by NYC and DSNY in the county of Queens, for two years.

16. Plaintiff  Thomas Libretti was employed by NYC and DSNY in the county of Queens, for four years.

17. Eric Adams was at all relevant times herein acting under color of state law as the Mayor of New York City and had final decision-making authority as the chief executive of the City.

18. Defendant New York City is a municipal corporation authorized under the laws of the State of New York and Plaintiffs employer at all relevant times herein.

<u>JURISDICTION AND VENUE</u>

19. This Court has original jurisdiction pursuant to 28 U.S.C. §1331. Pursuant to 28 U.S.C. §1343 this Court has original jurisdiction.

20. The United States District Court for the Eastern District of New York is the proper venue pursuant to 28 U.S.C. §1331 (b)(1) and (b)(2) as it is the judicial district in which Defendants deprived Plaintiff of their rights under the Constitution of the United States and it is where a substantial part of the events giving rise to Plaintiff's claims occurred.

<u>STATEMENT OF FACTS</u>

21. The United States Supreme Court explicitly found COVID-19 was not a threat specific to the workplace. Instead, it is a threat that exists anywhere people gather in public places. <u>NFIB et al., v OSHA et al.,</u> 595 U.S.__ [2022].

22. COVID-19 spread throughout the world.

23. No vaccine stops the transmission of COVID-19.

24. But if it did, then then the defendants would require everyone to be vaccinated.

25. Conversely, coercing only one segment of the population to take a shot makes no sense.

26. Nevertheless, around October 20, 2021, the acting Commissioner of the New York City Department of Health, and Mental Hygiene (DOH) ordered only city employees—including Plaintiffs—to be inoculated against COVID-19.

27. The DOH is a City agency, controlled by the Mayor of New York City.

28. The Commissioner ordered that any City employee who failed to get a shot by October 29, 2021, would—as a penalty—be excluded from their workplace beginning on November 1, 2021.

29. This Order applied only to City workers like Plaintiffs.

30. Between October 20, 2021, and March 24, 2022, everyone working in NYC had to be vaccinated against COVID-19 (Mandate or Vaccine Mandate).

31. The Mandate's justification was that it would protect the public from transmission and infection of COVID-19.

32. Public sector employees who did not comply were terminated.

33. Private business that did not comply were subject to fines—only on paper.

34. Plaintiffs did not interact with the public as part of their jobs.

35. Eric Adams publicly stated that his administration would not enforce the Vaccine Mandate for private businesses.[2]

36. And it did not.

37. The Adams administration did not fine a single private business *id*.

38. On or about March 24, 2022, the Mayor issued Executive Order No. 62 (EO or Mandate or Amended Mandate or Order).

39. The Order exempted professional athletes and performers from the Vaccine Mandate (Elite Exception).

---

[2] https://www.nytimes.com/2022/06/23/nyregion/nyc-vaccine-mandate-adams.html (retrieved January 23, 2023)

40. Adams' justification for the Elite Exception was that they travel for work and benefit the City economically since they often attract many visitors to the City. Further, New York sports teams with stadiums in the City—said the Mayor— were at a competitive disadvantage since the away teams were able to field unvaccinated players. As such, the New York sports teams were at a disadvantage. Mr. Adams decided that requiring professional athletes to get vaccinated was detrimental to the city's economy and moral of the city's residents.

41. The Elite Exception also applied to folks who travel with them—the elite by proxy.

42. The Mandate did not apply to residents of the City either.

43. Only public sector employees—such as Plaintiffs—were required to comply with the Mandate.

44. In a City with millions of people, countless members of the public interact with employees in private business, as well as with each other.

45. They are similarly situated in all material respect.

46. Any human being can transmit COVID-19 to another human being or group of human beings.

47. Highly contagious viruses like SARS-CoV-2 infect human beings indiscriminately.

Case 1:23-cv-00517-KAM-VMS   Document 1   Filed 01/24/23   Page 9 of 20 PageID #: 9

48. In an alleged public health crisis—concerning a "vaccine-preventable" ailment—Eric Adams exempted everyone in congregate settings from forced vaccination.

49. People could commute on the subway for example, standing within inches of one another, but Plaintiffs could not collect garbage outside—separate from the public—unless they received a shot.

50. On or about November 1, 2021, Plaintiff's Union entered a Memorandum of Understanding (MOA) with NYC.

51. The MOA covered the process for requesting accommodations as well as terms for DSNY employees who did not get the shot.

52. In relevant part, and in sum and substance, Plaintiffs would be considered to have voluntarily resigned if they did not get the shot by June 30, 2022.

53. In February 2022, the Commissioner of DSNY sent Plaintiffs a letter informing them that they were terminated.

54. Pursuant to the MOA the City could not terminate Plaintiffs.

55. On or about June 17, 2022, DSNY informed Plaintiffs by letter that if they showed proof of vaccination by June 30, 2022, they would be "reinstated . . .at [their] most recent salary . . .with no change to benefits or break in service."

56. NYC terminated Plaintiffs around June 30, 2022, for non-compliance.

57. Eric Adams and NYC did not prevent private sector employees from going to work depending on their vaccination status.

58. Eric Adams and NYC did not fine private sector employees or businesses that had not complied with the Mandate.

59. Quizzically, Adams' EO applied only to City workers and only punished them for not taking the shot.

60. The same City workers who put their lives at risk while the public quarantined during the worst of the pandemic. While not first responders, Plaintiffs helped keep the City from becoming a cesspool of filth and disease. They too, worked during the worst of the pandemic, while the public safely isolated.

61. Plaintiffs submitted requests for religious accommodations.

62. Every one of their requests were denied without explanation.

63. Defendant NYC provided no information about the exemption process to Plaintiffs.

64. Plaintiffs tried to find answers from NYC but were ignored.

65. Many Plaintiffs worked while a decision regarding their requests for accommodations were pending.

66. Defendant NYC and Plaintiff's union, had entered into a collective bargaining agreement in December 2021 (CBA), guaranteeing Plaintiffs continued employment absent proof of misconduct.

67. Plaintiffs did not engage in any work-related misconduct.

68. The CBA was in effect from January 20, 2019, through December 27, 2022.

69. The CBA did not include vaccination against COVID-19 as a condition of employment.

70. Adams subsequently lifted—on paper—the requirement that private sector employees must be vaccinated.

71. As of January 23, 2023, Adams continues to enforce the Mandate against only public sector employees.

72. Vaccination is a permanent, measure. It does not leave at the end of the workday.

73. There is no justifiable, rational basis related to public health for Defendants disparate treatment of Plaintiffs.

74. Eric Adams could not even conjure up the semblance of an excuse for the exemptions.

75. When reporters asked Adams why he was treating public servants differently than other workers he responded, "I don't think anything dealing with COVID is—makes sense, and there's no logical pathway." [3]

76. Nothing about Adams' Mandate is logical or related to furthering a legitimate public health interest.

77. The glaring absence of any rational basis for treating identically situated people differently leaves only impermissible considerations left.

78. Defendants have materially harmed every Plaintiff.

79. Every Plaintiff has suffered mental anguish and pecuniary loss.

---

[3] NPR News Article (retrieved 1-20-23).

80. Defendants took away Plaintiffs' futures and the security they worked hard to obtain.

81. Defendants caused Plaintiffs to suffer from stress, shame, embarrassment, humiliation, fear, and loss.

82. They invested everything into their careers.

83. Most Plaintiffs' have families, partners, and others they care for.

84. Defendants ostracized, demonized, dehumanized, discarded, and discriminated against Plaintiffs.

85. In October 2022, the New York State Supreme Court, County of Richmond declared that the Mandate violated New York's Equal Protection Clause, was arbitrary and capricious, and unconstitutional.[4]

86. Defendant Adams—blinded by hubris—continues to enforce the Vaccine Mandate anyway.

87. Where the law ends, tyranny begins.


<u>FIRST CAUSE OF ACTION</u>
- Against Defendant Adams -
VIOLATION OF THE FOURTEENTH AMENDMENT
On behalf of All Plaintiffs - [**16 counts**]
[Equal Protection Clause-Selective Enforcement]
<u>PURSUANT TO 42 U.S.C. §1983</u>

88. Plaintiffs repeat and re-allege every allegation above as though fully set forth herein.

---

[4] Garvey et al., v City of New York et al., (Decision and Order)

89. The Fourteenth Amendment prohibits any State from denying to "any person within its jurisdiction the equal protection of the laws."

90. 42 U.S.C. §1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

91. Eric Adams was acting under color of state law at all times.

92. Plaintiffs are similarly situated to other workers in the City plus members of the public because any human being can become infected with COVID-19 and transmit the virus to other people in any public setting.

93. Plaintiffs were selectively treated since only City workers like Plaintiffs had to get the shot.

94. Eric Adams' selective treatment was motivated by an intention to discriminate on impermissible considerations.

95. Motivation to discriminate is either permissible or impermissible.

96. There is not a single permissible reason for the discrimination. Therefore, it necessarily follows, that Adams' was motivated by an impermissible consideration.

97. Alternatively, and in addition to, Adams was motivated by an intention to discriminate against Plaintiffs based on their socioeconomic status.

98. Executive Order No. 62 exemplifies Adams' motivation. He exempted professional athletes and performers because they generate significant revenue for NYC. In contrast, Plaintiffs clean up garbage. Adams' impermissibly discriminated against Plaintiffs because they were "worth less."

99. Consequently, Adams created a social hierarchy made from the mold of a caste system.

100.  For instance, Brooklyn Nets basketball player Kyrie Irving declined the shot.

101.  Irving even turned down a four-year contract worth over one hundred million dollars because it required him to be vaccinated per the Mandate. [5]

102.  Notably, Irving said he felt stigmatized for his decision *id.*

103.  Eric Adams solved Irving's dilemma with Executive Order No. 62.

104.  Adams' audaciously exempted elites like Mr. Irving while continuing enforcement against working class Plaintiffs.

105.  Discrimination motivated by socioeconomic status or class is impermissible.

106.  In the second alternative, Adams' discriminatory intent was motivated by self-preservation.

107.  After years of touting a vaccine as "safe and effective," claiming that it stopped transmission, running constant ads, and telling the public to get

---

[5] https://www.espn.com/nba/story/_/id/34672230/gave-4-year-100m-plus-extension-unvaccinated (retrieved January 24, 2023)

vaccinated, Eric Adams—along with many other politicians—have influenced an enormous amount of people to get the shot.

108.   Adams' continued the same vaccination campaign since he took office.

109.   Adams' political image could have been damaged if he acknowledged countervailing evidence.

110.   For example, bivalent boosters are not even effective. *See* e.g., <u>Bivalent COVID-19 Vaccines—A Cautionary Tale,</u> The New England Journal of Medicine, [published January 11, 2023].[6]

111.   Plaintiffs were vocal about the countervailing evidence.

112.   If Adams allowed Plaintiffs to counter his narrative, it would arguably make Adams appear as though he was not in control, and it would force him to face the inconsistencies within his own narrative. Terminating Plaintiffs silenced their voices and deterred other workers from voicing their concerns.

113.   This motive is impermissible.

114.   In the third alternative, Adams' had direct animus towards Plaintiffs because of the stigma associated with not getting the shot.

115.   Plaintiffs were ostracized and labeled as outcasts. They were viewed as disease spreaders who would harm others, when all they simply had to do was take a "harmless shot."

116.   It doesn't matter that Adams' belief is patently false and mistaken. He was motivated by direct animus against Plaintiffs for their decision.

---

[6] https://www.nejm.org/doi/full/10.1056/NEJMp2215780 (last accessed January 23, 2023).

117.   This is impermissible.

118.   In the fourth alternative, Adams was motivated by generating revenue for NYC at Plaintiffs expense. The elites who enriched NYC were exempted.

119.   In the fifth alternative, Adams was fiscally motivated. Terminating Plaintiffs, and thousands of City workers relieved the City of its obligation to pay their salaries, health benefits and pensions. Terminating Plaintiffs saved the City millions of dollars.

120.   In addition, Adams' discrimination is equally rooted in a bad faith or malicious intent to injure Plaintiffs.

121.   The inescapable truth is that Adams discriminated against New York City's "backbone" without anything close to a cogent reason. He did it publicly and without any remorse or sympathy. Even worse, Adams threw City workers aside after they came together to protect the City's residents during the pandemic.

122.   He ruined countless lives for nothing. Plaintiffs for example planned their retirement around their career with DSNY. This is the embodiment of bad faith or malicious intent, per se. The intent naturally flows from the conduct.

123.   Eric Adams' could have stopped selectively enforcing the Mandate as quickly as he created it. But he did not. Instead, he knowingly continues to enforce it.

124.   Eric Adams is a career public servant.

125.   Adams is consciously aware that ending Plaintiffs' careers harms them individually.

126.   Thus, malicious intent is directly supported by Adams' carve outs, and selective enforcement of the Mandate.

127.   Malicious Intent can be inferred from the natural and probable consequences of a person's conduct. For instance, a person intends to cause physical injury to another person if he or she hits another person with a metal baseball bat.

128.   Analogously, the natural and probable consequences of terminating Plaintiffs is substantial harm to their livelihoods.

129.   Therefore, inventing the carve outs and continuing to implement the Mandate further evince malicious intent.

130.   Eric Adams deprived Plaintiffs of the equal protection of the laws.

131.   Eric Adams acted in violation of clearly established federal law. Law that has been well settled since Reconstruction.

132.   Defendant Adams' conduct shocks the conscience. He has continuously renewed emergency declarations without regard to community levels of COVID-19 or any basis rooted in public health. Consequently, he is able to use expanded emergency powers to issue edicts like a dictator. Adams' used COVID-19 as an excuse to wield nearly unlimited power.

133.   Adams abused his power. The Mandate has nothing to do with public health. Adams' instead used his power to play King; forcing thousands of

people to choose between getting a shot that they were deathly afraid of or loose their careers.  A shot that did not stop transmission. A shot that could harm them.

134.   Nothing is safe and effective for everyone.

135.   Eric Adams' is a politician, not Plaintiffs' doctor.

136.   If the Mandate was grounded in public health, there would be no exemptions.

137.   Either everyone would be compelled to get vaccinated, or no one would.


SECOND CAUSE OF ACTION
-Against Defendant NYC-
VIOLATION OF THE FOURTEENTH AMENDMENT
As to each Plaintiff individually [**16 counts**]
[Equal Protection Clause]
PURSUANT TO 42 U.S.C. §1983

138.   Plaintiffs repeat and re-allege every allegation above as though fully set forth herein.

139.   Eric Adams acted under color of state law at all times

140.   Adams was the final policymaker as the Mayor of New York City.

141.   Eric Adams issued Executive Order No. 62.

142.   Executive Order No. 62 directly and proximately deprived Plaintiffs equal protection of the laws.

143.   Executive Order No. 62 directly and proximately caused the caused Plaintiffs to suffer pain and suffering.

RELIEF SOUGHT[7]

144.    Under the First Cause of Action Plaintiffs seek-against Eric Adams **personally**:

    a.  Money judgment in the amount of seventeen million dollars for pain and suffering. Or one million one sixty-two thousand five hundred per each individual count.

    b.  Punitive damages against Eric Adams in an amount to be determined by a jury.

145.    Under the Second Cause of Action Plaintiffs seek-against the City of New York:

    a.  Money judgment in the amount of one-hundred million dollars.

146.    Plaintiffs further seek attorney's fees pursuant to 42 U.S.C §1988.

---

[7] Plaintiffs ARE NOT seeking any damages for backpay, front pay, or wages.

CERTIFICATION & CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated:   January 24, 2023
         Hauppauge, New York          Respectfully Submitted,

                                      CHAD J. LAVEGLIA ESQ.,
                                      LAW OFFICE OF CHAD J. LAVEGLIA
                                      *Attorneys for PLAINTIFF'S*
                                      350 Motor Parkway, Ste 308
                                      Hauppauge, NY 11788
                                      (631) 450-2468
                                      claveglia@cjLLaw.org