1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
GEORGE GARVEY, ADAM BIANCO,    :   23-CV-517(KAM)
ANTHONY FIGUEROA, CURTIS       :
CUTLER, DALE NICHOLLS,         :
DANIEL HULKOWER, FRANK         :
CALAMANCO, JAMES GERMANO,      :   United States Courthouse
KOLA SMITH, MANDEL BAILEY,     :   Brooklyn, New York
MITCHUM GREENE, PATRICIA       :
BUCCELLATO, RALPH MARTINEZ,    :
RUSSELL PIAZZA, SEAN ABELL,    :
THOMAS LIBRETTI,               :   Thursday, April 6, 2023
                               :   12:30 P.M.
        Plaintiffs,            :
                               :
                               :
                               :
        -against-

ERIC ADAMS, AND THE CITY OF
NEW YORK,

        Defendants.
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF PRE-MOTION CONFERENCE
BEFORE THE HONORABLE JUDGE KIYO MATSUMOTO

A P P E A R A N C E S :

For the Plaintiffs:    LAW OFFICE OF CHAD J. LAVEGLIA
                       Attorneys for the Plaintiffs -
                       GEORGE GARVEY, ADAM BIANCO, ANTHONY
                       FIGUEROA, CURTIS CUTLER, DALE NICHOLLS,
                       DANIEL HULKOWER, FRANK CALAMANCO, JAMES
                       GERMANO, KOLA SMITH, MANDEL BAILEY,
                       MITCHUM GREENE, PATRICIA BUCCELLATO,
                       RALPH MARTINEZ, RUSSELL PIAZZA, SEAN
                       ABELL, THOMAS LIBRETTI
                       350 Motor Parkway, Ste 308
                       Hauppauge, New York 11788
                       BY: CHAD LAVEGLIA, ESQ.


For the Defendants:    NEW YORK CITY LAW DEPARTMENT

2

```
                           OFFICE OF THE CORPORATION COUNSEL
                           Attorney for the Defendants
                           ERIC ADAMS, AND THE CITY OF NEW YORK
                           100 Church Street
                           New York, [!STATE2] 10007
                           BY: DAVID VICTOR HOLMES, ESQ.


Official Court Reporter:  ToniAnn Lucatorto, RPR, RMR, CRR
                 Telephone: (718) 613-2601
                 E-mail: ToniAnnLucatorto@gmail.com


Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.
```

1      (In open court.)

2      THE COURT:  This is the pre-motion conference for

3  Garvey versus City of New York.  22 civil 517.  Plaintiff's

4  counsel, Mr. Chad LaVeglia, has just appeared.  And who do

5  we have for the defendant, please?

6      MR. HOLMES:  David Holmes from the Office of the

7  Corporation Counsel, your Honor.

8      THE COURT:  All right, thank you.

9      Counsel, if I can just ask you please remember to

10  identify yourself when you speak so we know who is speaking.

11  We have a court reporter who is making a transcript of

12  today's conference.  So, as you know, the defendants have

13  asked to dismiss the lawsuit.  Given that there is a pending

14  previously filed Article 78 proceeding in state court that,

15  except for a few defendants, is identical to the case

16  pending in federal court.  And the defense wishes to dismiss

17  because there is not -- it's not appropriate to file two

18  lawsuits and put them on parallel tracks in state and

19  federal court and see which lawsuit yields the results that

20  the parties seek.  The defendants make a compelling argument

21  that the article 78 proceeding could have entertained any or

22  all of the claims that are currently pending before this

23  court.  The parties.  Except for the Department of Health

24  and Mental Hygiene and the commissioner are otherwise the

25  same.  And the Second Circuit has held for a long time now

1    that if claims arised out of the same factual grouping, they

2    are deemed to be part of the same cause of action, and a

3    later claim will be barred in that regard to whether its

4    based on theories or seeks different additional relief.

5    This is versus BMC Mortgage, Inc.  737 Federal Appendix 573.

6    Citing an older Second Circuit case; Davidson versus

7    Kapuana.  792 F.2nd 275 decided in 1986.

8           Now, the other -- in front of you that the

9    defendants have identified is that the selective enforcement

10   theory of the plaintiff's case, if one were to reach the

11   merits, does not state a claim because the Second Circuit,

12   again, requires that there be facts, plausible facts, and

13   ultimately proof that a plaintiff must show that he,

14   compared with other similarly situated, was selectively

15   treated, and the selective treatment was motivated with the

16   intention to discriminate on the basis of race, religion,

17   national origin, sex or some other factor -- exercise the

18   constitutional right and that there be -- bad faith on the

19   part on the defendant's with an intent to injure the

20   plaintiff.

21          So those facts are absent from the complaint.  It

22   appears that the plaintiff's, although it's theory it's

23   certainly not supportable by any law that they're comparing

24   private sector to City employees and arguing that private

25   sector employees should constitute a group, a comparative

1  group.  Which, frankly, the law just doesn't support.  This

2  claim, if it's to proceed, has to depend on an unequal,

3  selective enforcement based on, as I said, race, religion,

4  etcetera.

5          So let me ask Mr. LaVeglia, would you like to be

6  heard?  I got your letter, but would you like to be heard?

7          MR. LAVEGLIA:  Yes, your Honor.  Chad LaVeglia,

8  again, for plaintiff.  I do understand the Res judicata

9  argument if I may address that first.  According to Marcel

10 Fashions Group, Inc, the Lucky Brand Dungarees,

11 D-U-N-G-A-R-E-E-S, from the Circuit in 2015 Res judicata

12 does not apply where there's a continuation of the same

13 course of conduct.  So here, even though the plaintiffs did

14 prevail in an Article 78 in lower court, Eric Adams

15 continued to enforce the vaccine mandate for months and

16 beyond that date.  And so a continuing course beyond the

17 original claim that was in state court.

18         THE COURT:  Well, wasn't the state court

19 addressing that issue?

20         MR. LAVEGLIA:  Well, it couldn't have been

21 addressed because the conduct occurred after.  After the

22 Court made the ruling, the Mayor still continued to enforce

23 this vaccine mandate.

24         THE COURT:  Well, let me ask you.  Did all of the

25 plaintiffs lose their jobs because of their vaccine mandate

1   or did they invoke any of the procedures that were typical

2   of other municipal employees?

3           MR. LAVEGLIA:  Well, the lower court or the state

4   court ordered the City to reinstate them, but the City

5   appealed, and pursuant to the CPLR, there's no automatic

6   stay on that portion of the order.

7           THE COURT:  Well, there's no reason for me to go

8   forward if that case is that far along.

9           MR. LAVEGLIA:  I understand, your Honor.

10          THE COURT:  I mean, it just it's not appropriate

11  for plaintiff's to go to two different forums; state and

12  federal, and proceed along parallel tracks.  You first chose

13  state court, you got a good result there, you're waiting an

14  appeal.  But the federal court is not going to step into the

15  middle of a state court adjudicated matter.  Or assert its

16  jurisdiction.  I don't think it would be appropriate when

17  there is a pending appeal.

18          MR. LAVEGLIA:  I happen to agree, your Honor.

19          THE COURT:  Well, I'll hear from the defense

20  because they can -- this is their motion.  And I'm happy to

21  hear from them.

22          MR. HOLMES:  David Holmes from the Office of the

23  Corporation Counsel.  With regard to the claim of a

24  continuing violation, the defendants believe that does not

25  hold merits for the very reasons that were offered by the

1   plaintiff's, which is, that when the case was appealed,

2   results in statutory stay in the reinstatement process as

3   portions of the order.  Which is why there would have been a

4   continuation of the enforcement of such a mandate.  So it

5   would have been as a result of that appeals process.  And

6   there should not be considered a continuing violation.

7            Moreover, the case cited by plaintiffs involved an

8   instance in which both parties settled and come to a

9   complete resolution, and then the violations continued.  In

10  this case, we are still ongoing in litigation by both the

11  plaintiff and your Honor.

12           THE COURT:  You're saying that Marcel Fashions

13  Group caved?  Is that the one you're referring to as having

14  reached a settlement?

15           MR. HOLMES:  Yes.  That was my understanding, your

16  Honor.

17           THE COURT:  All right.  So Mr. LaVeglia, you have

18  to -- I just want to ask you how you want to proceed?  I

19  don't know whether there are any facts that you can allege

20  regarding the claim that the City took selective, you know,

21  enforcement against you.  Your clients.  Are there any

22  facts?  I mean , do you want to amend your pleading to see

23  if you can put facts in that would make out an equal

24  protection claim based on race, religion, gender, you know.

25           MR. LAVEGLIA:  Well, if I may, your Honor.  I do

1   think that there is a strong case for the selective

2   enforcement.  I mean, we're talking about a virus that was

3   present everywhere that public people gathered or people

4   gathered in public.  I mean, the Supreme Court in NFIB V.

5   OSHA acknowledged that.  That places of employment are not

6   any different than any other public place and they shouldn't

7   be treated any differently.  And by making or ordering just

8   city employees to get vaccinated, and only city employees,

9   it's irrational and arbitrary.  And then taking away their

10  livelihood is evidence of bad faith.  I mean, the Mayor is a

11  lifelong public servant.  He knows that these are careers.

12  They're not just temporary jobs.

13          THE COURT:  Sir, I understand the argument and

14  it's a sympathetic one, but I'm talking about the law.

15  Equal protection requires that the law is being applied and

16  based on and because of race, religion, sex, national

17  origin, etcetera.

18          Do you want an opportunity to amend your pleading

19  to make out facts regarding an appropriate equal protection

20  action?

21          MR. LAVEGLIA:  Your Honor, I don't think so

22  because I believe that it would be improper for me to

23  proceed forward, considering the strength of the Res

24  judicata conduct.

25          THE COURT:  So are you saying you're going to

1   dismiss this case?

2           MR. LAVEGLIA:  Yes.  I don't believe there would

3   be a good faith basis to go forward, considering the

4   strength of the res judicata, and the state proceedings are

5   ongoing.  And as counsel said, and correctly so, there was

6   an automatic stay.  So even if it was continuous, it doesn't

7   really matter.  Because the Mayor was not bound by the -- as

8   a result of the automatic stay.

9           THE COURT:  Did they rescind the vaccine mandate

10  some time ago?

11          MR. LAVEGLIA:  He did in, I believe it was

12  February.  The beginning of February.

13          THE COURT:  Okay.  And was the case already stayed

14  by then?

15          MR. LAVEGLIA:  Yes, your Honor.

16          THE COURT:  All right.  So if I -- if you are

17  going to withdraw your case in the federal court and proceed

18  in state court, I think what I'd like to do is either get

19  your consent on behalf of all of your clients that you're

20  dismissing this case with prejudice.  Because you have a

21  pending state court case.  Or if you get a stipulation, but

22  I think your -- some of your clients are on the phone.  I

23  don't know which ones.  I know at least one gentleman did

24  identify himself.  But my point is is that you do have the

25  ability to authorize the dismissal.  But I want to make sure

1    that your clients have cleared with you and given your

2    permission to dismiss the federal case with prejudice.

3            Can you make that representation to me as an

4    officer of court?

5            MR. LAVEGLIA:  I cannot at this moment.  I would

6    like to speak with them first, if I may.

7            THE COURT:  All right, that's a good idea.  So

8    let's do this.  I will order that you talk to your clients,

9    the main plaintiffs here.  George Garvey, Adam Bianco,

10   Anthony Figueroa, Curtis Cutler, Dale Nicholls, Daniel

11   Hulkower, Frank Calamanco, James Germano, Kola Smith, Mandel

12   Bailey, Mitchum Greene, Patricia Buccellato, Ralph Martinez,

13   Russell Piazza, Sean Abell, and Thomas Libretti.

14           As an officer of the court, if you get all of your

15   consent to dismiss, you should represent that in a

16   stipulation of dismissal that you are dismissing on behalf

17   of all the plaintiffs.  Alternatively, if the defense wants

18   this, each of the named plaintiffs can sign the stipulation

19   of dismissal with you also.  On the stip about that.

20           So let me ask Mr. Holmes:  What would you feel

21   most comfortable with at this point?

22           MR. HOLMES:  Yes.  David Holmes from the Office of

23   The Corporation Counsel.  So I think it would be probably

24   most efficient if plaintiff's counsel could speak to all of

25   his clients and if then issue one singular stipulation to

1    the Court.  But we're happy to get all of the signatures of

2    all of the plaintiffs, if that happens to be more efficient.

3              THE COURT:  Usually when an attorney appears for a

4    client and would takes any action his or her behalf, his

5    actions will bind the client.  But I want to make sure that

6    all of the plaintiffs understand that this federal case will

7    be dismissed with prejudice.  Meaning, you can't come back

8    to federal court with this claim because you've got

9    identical claims pending in the state court and you

10   succeeded.  So all right.  Were you going to say something,

11   sir?

12             MR. LAVEGLIA:  Sorry, Chad LaVeglia for plaintiff.

13   I would be able to speak with everybody and we've all been

14   on the same page, so when I explain it to them, I would be

15   able to get their individual consent.

16             THE COURT:  All right.  So let's ask that you

17   submit stipulation of dismissal no later than -- and then

18   Mr. Holmes will have to sign it as well.  How much time do

19   you need?  A week or two?

20             MR. LAVEGLIA:  A week, your Honor.

21             THE COURT:  Just one week, all right.  I'm giving

22   you until Friday, April 14th.  Is that all right?

23             MR. LAVEGLIA:  Yes, your Honor.

24             THE COURT:  So stipulation of dismissal will be

25   submitted with prejudice by Friday, April 14th.  All right.

1          All right.  Thank you.  And Mr. Holmes, you should

2     also keep track just to make sure that you get that stip in

3     time so that it can be uploaded to the docket by the 14th.

4          MR. HOLMES:  Yes, your Honor.

5          THE COURT:  All right.  Thank you, counsel.  And

6     thank you for all of the plaintiffs that joined us today.

7     Have a good day.

8          (Proceeding concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25